## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Carol S.D.,[1]                                         Case No. 23-cv-1939 (DJF)

     Plaintiff,

v.                                                             **ORDER**

Martin J. O'Malley,
*Commissioner of Social Security*
*Administration*,

     Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Carol S.D. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") ("Decision").  Plaintiff asks the Court to reverse the Decision and remand this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g). (ECF No. 1.)  The Commissioner asks that the Decision be affirmed in its entirety.  (ECF No. 16.) This matter is before the Court on the parties' briefs.[2]  For the reasons given below, the Court affirms the Decision in part and reverses it in part and remands this matter to the Commissioner for further review consistent with this Order.

## BACKGROUND

### I.    Plaintiff's Claim

Plaintiff applied for DIB on March 4, 2020.  (*See* Soc. Sec. Admin. R. (hereinafter "R.")

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including entry of the final judgment.

268–69).[3]   At that time, she was a 62-year-old woman with a Bachelor of Science degree (R. 94) who previously worked as a job counselor and workforce development representative (R. 35, 341). Plaintiff alleged a disability onset date of February 19, 2020 (R. 25, 268), resulting from: fibromyalgia; bi-polar type II; personality disorder; panic disorder; persistent depressive disorder; post-traumatic stress disorder; social anxiety disorder; social phobia; insomnia; neural foraminal stenosis narrowing; central stenosis degenerative disc disease; facet disease; bulging discs; cerebral atrophy; ligamentum flavum thickening; lung fibrosis; multiple lung nodules up to 7 mm; diabetes; asthma; chronic obstructive pulmonary disease; perfusion defect of the heart; left bundle branch block; first degree atrioventricular block; tenosynovitis; and arthritis of trapezium joint left hand (R. 54–55).

## II.    Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).   In addition, an individual is disabled "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).   "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

---

[3] The Social Security administrative (R.) is filed at ECF No. 9. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 416.920(a)(4).  At step one, the claimant must establish that she is not engaged in any "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 416.920(a)(4)(iii).[4]  If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" impacted.  *See* 20 C.F.R Part 404, Subpart P, App. 1.

## III.    Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 54–71) and on reconsideration (*see* R. 133–53).  On October 19, 2021, at Plaintiff's request (R. 166–67), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 90–113).  An attorney represented Plaintiff during the hearing, and Plaintiff and a Vocational Expert ("VE") testified.  (*Id.*)  The ALJ issued his Decision on November 3, 2021.  (R. 23–37.)  The ALJ determined at step one of the sequential analysis that Plaintiff had not been engaged in any substantial gainful activity since her alleged disability onset date.  At step two, the ALJ found Plaintiff had the following severe impairments: left upper extremity arthritis; left hip arthritis; bipolar disorder; obsessive compulsive disorder; panic disorder with agoraphobia; and post-traumatic stress disorder.  (R. 25.)  The ALJ also found Plaintiff had the following non-severe impairments: obesity; diabetes mellitus, type II; history of alcohol abuse; esophageal reflux; vertigo; myopia; age-related cataracts; and hyperlipidemia.  (R. 26–27.)  Finally, the ALJ noted Plaintiff had experienced temporary impairments arising from infections causing sore throat, pneumonia and edema.  (R. 27.)

The ALJ concluded at step three that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing.  (R. 27–29.)  The ALJ then determined that Plaintiff:

> has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb ladders, ropes or scaffolds. The claimant can occasionally crawl. She can frequently handle and frequently finger with the left upper extremity. She must avoid frequent exposure to irritants such as fumes, odors, dusts, gases and poorly ventilated areas. The claimant can perform work in a low-stress job: occasional decision-making required, occasional changes in the work setting, occasional interaction with the public and occasional interaction with coworkers.

(R. 29.)

4

The ALJ reviewed the record in detail in explaining his RFC determination.  He observed that though Plaintiff reported limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, seeing, using her hands, and climbing the stairs, her doctor's treatment notes from a March 2021 colonoscopy indicated "no complaints of back pain, joint pain, joint swelling, or muscle weakness" (R. 32, citing R. 1126), and her mental health providers indicated she had "normal gait and station and normal psychomotor functioning" (*id.*, citing R. 1167).  Mayo clinic treatment notes from 2019 indicated that though she had been diagnosed with asthma and dyspnea on exertion, she had a normal gait, 5/5 strength, intact sensation, and only mildly diminished air entry with no wheezing.  (*Id.*, citing R. 461–548.)  The ALJ noted Plaintiff's history of arthritis in her left hand and acknowledged that arthritis "is not a condition that improves with time," but found the restrictions and limitations included in his RFC determination adequately addressed this condition.  (*Id.*)  The ALJ further noted that in October 2020, Plaintiff was treated for shortness of breath and diagnosed with pneumonia and COPD, but on follow-up, she had normal breath sounds and continued treatment only for mild asthma and dyspnea on exertion.  (R. 32–33.)  The ALJ also observed that Plaintiff visited a chiropractor for lower back, hip, leg and ankle pain.  (R. 33.)  Though the chiropractor's examination findings indicated pain with straight leg raising, tenderness, and a reduced range of motion in her lower extremities, he concluded her symptoms were subacute and that she would respond fairly to conservative care.  (*Id.*, citing R. 777.)  Finally, the ALJ observed that Plaintiff sought treatment for left lateral hip pain in September 2021.  Though an x-ray showed moderate left hip arthritis, she ambulated without difficulty and there was no edema.  (*Id.*, citing R. 1335.)

After cataloging the mental and physical health evidence in the record, and based on the VE's testimony, the ALJ determined that Plaintiff was unable to return to her previous employment (R. 35–36). But based on Plaintiff's age, education, work experience, and RFC, and relying on the VE's testimony, the ALJ found there were at least 26,000 jobs in the national economy that Plaintiff could perform, including representative occupations such as: laundry laborer (15,000 jobs nationally) and linen room attendant (11,000 jobs nationally) (R. 36–37). The ALJ concluded Plaintiff was not disabled (R. 37). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 8–11), and this lawsuit followed.

## DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ erred in his assessment of the opinions of five different medical providers, including the State Agency consultants, as "not persuasive"; and (2) the ALJ's finding that Plaintiff can perform a significant number of jobs in the national economy is not supported by substantial evidence. (ECF No. 14.)

## I.    Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

## II.  Medical Opinions

Plaintiff asserts that "the ALJ's rationale for discounting *every* medical opinion contained in the record does not comply with the Commissioner's regulations."  (ECF No. 14 at 11.)  She raises two arguments with specificity: (1) the ALJ improperly dismissed the opinions of State Agency medical consultants George Erhard, M.D. and Paul Ossmann, M.D., and treating mental health providers Timothy Lang, Psy. D., Edward Sathoff, M.D. and Rebecca Mensing, LICSW, by finding only that their opinions were "inconsistent with the record as a whole" (*id.* at 13); and (2) the ALJ failed to detail what consideration he gave, if any, to the examining and treating relationships Dr. Lang, Dr. Sathoff, and Ms. Mensing had with Plaintiff, and thus failed to create a logical bridge from the facts to his conclusions regarding the persuasiveness of their opinions (*id.* at 13–14).

In assessing medical opinions, the Commissioner must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, the applicable regulations provide that the Commissioner will evaluate medical opinions and prior administrative medical findings based on several enumerated factors:  (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's area of specialization; and (5) "other factors", including the medical source's familiarity with other evidence in the claim or understanding of Social Security Program policies, and whether new evidence came to light after the medical opinion was provided.  20 C.F.R. § 404.1530c(c).  The most important factors, when determining how persuasive a medical opinion or finding is, are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).

"Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); *see also Postel v. Saul*, 18-cv-2017 (MAR), 2019 WL 4720990, at *13 (N.D. Iowa Sept. 26, 2019) (finding medical opinion unreliable, in large part, because it was inconsistent with "counselor's and medication managers' treatment notes"); *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (affirming ALJ's rejection of treating physician's opinion in light of plaintiff's relatively conservative course of treatment).  An ALJ must explain how he considered and evaluated both the consistency and supportability factors but is not required to explain how he evaluated the other factors.  20 C.F.R. § 404.1520c(b)(2).

**A.** **The State Agency Medical Consultants' Opinions**

State Agency medical consultant George Erhard, M.D., concluded that Plaintiff could perform light work with frequent climbing ramps/stairs, occasional climbing ladders, ropes, or scaffolds, frequent balancing, frequent stooping, frequent kneeling, frequent crouching and occasional crawling.  He also found Plaintiff could perform only frequent handling and fingering on the left side, but must avoid even moderate exposure to extreme cold, concentrated exposure to wetness, concentrated exposure to humidity, moderate exposure to fumes, odors, dusts, gases and poor ventilation, and concentrated exposure to hazards.  (*See* R. 67–69.)  On reconsideration, Dr. Ossmann reached the same conclusions.  (*See* R. 147–50.)

The ALJ rejected the State Agency consultants' opinions as "not persuasive", finding Plaintiff is not limited to light work and instead is capable of medium work in a low stress environment.  (R. 33-34.)  The regulations define "light work" as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  In contrast, "medium work" requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

In rejecting Dr. Erhard's opinion that Plaintiff is limited to performing light work, the ALJ stated that it was "inconsistent with the record as a whole, especially findings that [Plaintiff] ambulated without difficulty."  (R. 33, citing R. 1320–33.)  And in rejecting Dr. Ossmann's opinion, the ALJ stated that "the treatment record, the types of symptoms reported in the updated treatment notes and the activities [Plaintiff] reported doing, such as landscaping, support a finding that she can perform medium work …."  (R. 34.)

The ALJ's rationale in finding the State Agency consultants' opinions "inconsistent" with the record is weak at best.  The Court finds no logical bridge between the ALJ's observation that Plaintiff had no difficulty ambulating and his conclusion that this 62-year-old, morbidly obese woman with arthritis—and no history of medium work—is capable of lifting 50 pounds.  If anything, the ALJ's finding that Plaintiff has no trouble ambulating supports the consultants' light work restriction, which includes jobs requiring "a good deal of walking or standing". 20 C.F.R. § 404.1567(b).  That Plaintiff's activities included "landscaping" potentially supports the ALJ's conclusion, though the degree to which that activity required Plaintiff to lift 50-pound objects is

unclear since she did not engage in landscaping in any professional capacity.  It is not the Court's role to reweigh the evidence, however.  *See Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022). The Court therefore defers to the ALJ's determination that Plaintiff's participation in landscaping conflicts with the State Agency consultants' light work restriction, such that the consistency factor is satisfied.

But the ALJ did not address the supportability factor at all.  "In articulating the supportability factor, an ALJ may note the physician's own treatment does not support the physician's opinion, the physician's opinion stems from a checklist, the physician did not consider certain evidence, the physician did not examine the claimant, or the physician did not provide a detailed explanation for the opinion."  *Hirner v. Saul*, 2:21-cv-38 (SRW), 2022 WL 3153720, at *10 (E.D. Mo. Aug. 8, 2022) (citing *Starman v. Kijakazi*, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases)).  Here, the ALJ addressed how he believed the record supports his own finding that Plaintiff can do medium work.  (R. 33, "the types of symptoms reported in the updated treatment notes and the activities she reports doing, such as landscaping, support a finding that she can perform medium work as described above.")  But sprinkling the word "support" in a decision is insufficient to satisfy the regulatory requirement.  *Johnson v. O'Malley*, No. 4:23-CV-320 (NCC), 2024 WL 1328250, at *4 (E.D. Mo. Mar. 28, 2024).  The ALJ's Decision entirely fails to address the extent to which the record does or does not support the State Agency consultants' opinions.  An ALJ's failure to address either the consistency or supportability factors in assessing the persuasiveness of a medical opinion requires reversal.  *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam).  The Court thus orders remand to address the supportability factor in evaluating the State Agency consultants' opinions.

The ALJ also rejected many of the limitations on exposure to environmental conditions that the State Agency consultants sought to impose.  (*See* R. 67-69, stating that Plaintiff must avoid even moderate exposure to extreme cold, concentrated exposure to wetness, concentrated exposure to humidity, moderate exposure to fumes, odors, dusts, gases and poor ventilation, and concentrated exposure to hazards.)  The ALJ instead found that by restricting Plaintiff from "frequent exposure to irritants such as fumes, odors, dusts, gasses and poorly ventilated areas," his RFC determination adequately addressed her shortness of breath, obesity and arthritis.  (R. 33.)  But the Decision does not explain how the narrower limitations adopted in his RFC determination addressed Plaintiff's other conditions, including her type II diabetes, and he rejected the medical judgement of the State Agency consultants in conclusory fashion, stating only that "the record does not support all the environmental limitations" they sought to impose. (*Id*.)  In doing so, he failed to identify any portion of the record he found inconsistent with their opinion or to explain his rationale in finding their proposed restrictions unsupported.  He thus did not address—in any meaningful way that the Court can logically follow—either the consistency or the supportability of the State Agency consultants' opinion regarding Plaintiff's environmental restrictions.  The Court orders remand on that basis.  *See, e.g.*, *Susan H. v. Kijakazi*, No. 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023) (finding ALJ's failure to explain how he considered the supportability and consistency factors related to a medical source's opinion constitutes legal error) (citations omitted).

### B.    The Treating Mental Health Providers' Opinions

Plaintiff further challenges the ALJ's Decision on the ground that he improperly rejected the opinions of Plaintiff's treating mental health providers—Dr. Lang, Dr. Sathoff and Ms. Mensing—based solely on the conclusory statement that they are "inconsistent with the record

as a whole." (ECF No. 14 at 13.) She specifically notes that the Decision fails to detail what consideration, if any, the ALJ gave to their examining and treating relationships with Plaintiff. (*Id*.)

Although an ALJ evaluating a medical opinion must *consider* all the factors set forth in 20 C.F.R. § 404.1520c, he need not explicitly *address* all the factors. *See Derda v. Astrue*, No. 4:09-cv-01847 (AGF), 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011); *Klopfenstein v. Saul*, No. 4:18-cv-01106 (JAR), 2019 WL 4419009, at *7 (E.D. Mo. Sept. 16, 2019). "Failure to discuss each factor does not mean the ALJ did not consider them." *Delmater v. Berryhill*, No. 2:16-cv-70 (SPM), 2018 WL 1508868, at *5 (E.D. Mo. Mar. 27, 2018). The only factors an ALJ must explicitly address are supportability and consistency, as previously discussed. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ clearly considered Plaintiff's treating relationships with Dr. Lang, Dr. Sathoff, and Ms. Mensing. (*See, e.g.*, R. 31, describing Plaintiff's treatment histories with Ms. Mensing and Dr. Sathoff; R. 26, 30–31, describing Plaintiff's treatment with Dr. Lang.) Because the ALJ was not required to explicitly explain how Plaintiff's treatment history with these providers affected his evaluation of their opinions, the Court cannot fault that omission from his Decision.

Furthermore, the Court finds the Decision adequately addressed the consistency and supportability factors in rejecting these providers' opinions. Plaintiff's contention that the ALJ discounted their opinions solely as "inconsistent with the record as a whole" entirely ignores the ALJ's analysis.

Dr. Lang found Plaintiff's capacity to understand, remember and follow instructions was fair to poor; her ability to sustain attention was fair to poor; her ability to carry out work-like

tasks with reasonable persistence was fair and her pace was slow; her ability to respond appropriately to brief and superficial contract with supervisors, co-workers, and the public was poor; and her ability to tolerate stress and pressure typically found in entry-level work was poor. (R. 742–43.)  The ALJ rejected Dr. Lang's opinion in light of: (1) Plaintiff's reported activities during the period of disability, including her participation in a retreat at which she enjoyed writing and photography; (2) her mental health history, showing she worked for over 15 years with symptoms of anxiety, poor concentration and attention and bipolar disorders; (3) her college degree in social work and consistent work in that field for over two decades; (4) her testimony indicating a history of being able to work despite symptoms of stress and paranoia while around others; and (5) her mental status examinations, which indicated during the alleged disability period that her symptoms were intermittent and benefited from treatment and sobriety.  (R. 34.) The ALJ thus offered a breadth of reasons for his finding that Dr. Lang's opinion was inconsistent with the record.  And though the ALJ did not explicitly use the word "support" in discussing Dr. Lang's opinion, he described the mental status examinations and mental health history underlying that opinion and explained why he found they did not support Dr. Lang's conclusions.  (*See* R. 26, 30-21, detailing Plaintiff's July 2020 psychological consultative examination with Dr. Lang; R. 34, finding the examinations underlying Dr. Lang's opinion showed Plaintiff's symptoms were intermittent and treatable.)   The Court concludes on that basis that though the ALJ's supportability analysis was not robust, he did enough to address supportability and consistency with respect to Dr. Lang.

Dr. Sathoff determined that Plaintiff has moderate to extreme limitations, including an extreme limitation in her ability to interact with others.  (R. 1290–91.)  The ALJ found Dr. Sathoff's opinion was unpersuasive.  (R. 35.)   In doing so, the ALJ expressly addressed

supportability, noting that Dr. Sathoff "supported the opinions with citation to [Plaintiff's] diagnoses and indicated that [Plaintiff's] symptoms were not in remission despite treatment." (*Id.*)  The ALJ then concluded, however, that Dr. Sathoff's opinion was inconsistent with the treatment record as a whole, including: (1) Dr. Sathoff's treatment notes from July 2021 indicating improvement in Plaintiff's psychiatric symptoms, that she was no longer sad, and that she had recently attended a poetry retreat; and (2) Dr. Lang's finding that Plaintiff's style of relating was restricted but her communication was adequate.  (*Id.*)  The Court thus concludes the ALJ's evaluation of Dr. Sathoff's opinion was consistent with the regulations.

Ms. Mensing determined that Plaintiff has no useful ability to perform in six out of eighteen areas of functioning, including: maintaining attention for two-hour segments; working in coordination with or proximity to others without being unduly distracted; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  (*See* R. 1292–97.)  The ALJ found Ms. Mensing's opinion unpersuasive.  The ALJ first acknowledged that Ms. Mensing supported her conclusions with citations to Plaintiff's treatment history, therapy, medications, and subjective reports of poor sleep, along with clinical findings that Plaintiff had difficulty focusing, remembering series of events, and difficulty concentrating.  (*Id.*)  But the ALJ found Ms. Mensing's opinion was inconsistent with: (1) the record as a whole, "including the mental status examination reports that show[ed] normal thought process and normal rate of thought," (*id.*); and (2) the Plaintiff's report that she attended a retreat and went to bars (*id.*, citing R. 1161–1289).  Because the ALJ reviewed both the supportability and the consistency of Ms. Mensing's opinion and identified parts of the record that logically supported his analysis, the Court concludes the ALJ committed no legal error in his evaluation of Ms. Mensing's opinion.

### III.     The Number of Jobs in the National Economy

Plaintiff further challenges the ALJ's decision at step five of the analysis.  At step five, the Commissioner must prove that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  42 U.S.C. § 423 (d)(2)(A).  "'[S]ignificant numbers in in the national economy' as applied in the context of a Social Security claim is a specific term of art …."  *Britton v. Berryhill*, 4:17-cv-1956 (DDN), 2018 WL 4332062, at *6 (E.D. Mo. Sept. 11, 2018) (quoting 42 U.S.C. § 423 (d)(2)(A)).  "Work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.* (citations and quotations omitted); *see* 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.").

The Eighth Circuit "ultimately leave[s] to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation."  *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997).  There is a split in the Eighth Circuit, however, regarding how courts should take this "common sense" approach.  *See Shari B. v. Kijakazi*, No. 22-CV-1539 (DJF), 2023 WL 6130679, at *7–*9 (D. Minn. Sept. 19, 2023).  In the District of South Dakota, courts have "repeatedly held that VE testimony solely concerning national job numbers for DOT occupations is insufficient to carry the Commissioner's burden at step five of the sequential analysis; there must be direct evidence of a significant number of jobs either in the claimant's 'region' or in 'several regions.'"  *Alice T. v. Kijakazi*, 8:21-cv-14, 2021 WL 5302141, at *16 (D. Neb. Nov. 15, 2021) (collecting cases).  In contrast, courts in the Eastern District of Missouri hold that "evidence of jobs existing nationally does constitute evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the

jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country." *Hayden v. Saul*, No. 4:19-cv-187 (SPM), 2020 WL 888002, at *10-12 (E.D. Mo. Feb. 24, 2020) (finding a total of 200,000 jobs nationally for work as a product inspector, assembler, or packer was a significant number) (collecting cases). Surveying case law from across the country, this Court noted in *Shari B.* that "many courts appear to draw the line between a 'significant' and insignificant number of jobs in the national economy—without evidence of the number of jobs available locally—at around 20,000 jobs." 2023 WL 6130679, at *8 (citing *Young v. Astrue*, 519 F. A'ppx. 769, 772 (3d Cir. 2013) (finding VE's testimony that 20,000 jobs were available in the national economy was sufficient to support a finding that work exists in significant numbers" when the VE had also testified to the number of jobs available locally)); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (holding that 25,000 jobs in the national economy was a close call but met the significant numbers requirement); *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 649–50 (10th Cir. 2020) (finding plaintiff did not establish 20,500 to 22,000 jobs nationally was a very limited number of jobs); *John C. v. Saul*, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021) (holding 20,000 jobs nationally was not significant). Because the Eighth Circuit has emphasized the district court's flexibility with respect to this question, the Court declined to impose a *per se* rule that ALJs are required to examine whether jobs exist in the *local* economy if they have identified significant numbers of jobs in the *national* economy. *See Shari B.*, 2023 WL 6130679, at *8 (citing *Hall*, 109 F.3d at 1259 (8th Cir. 1997) (leaving to "the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation"). But a regional breakdown may be necessary if the number of jobs nationally is insufficiently large. *Id.*

In this case, the ALJ identified only a total of 26,000 jobs in the national economy and did not evaluate whether any of those jobs exist in the local or regional economies (*see* R. 37, identifying laundry laborer (15,000 jobs nationally) and linen room attendant (11,000 jobs nationally) as alternative jobs Plaintiff could perform).   There is no evidence in the record regarding any other representative occupations Plaintiff might be able to perform.

Although this is a close case, the Court finds the ALJ met his burden at step five.  *See, e.g.*, *Gutierrez*, 740 F.3d at 529 (9th Cir. 2014) (holding that 25,000 jobs in the national economy was a close call but met the significant numbers requirement); *Nicolas C. J. v. Kijakazi*, 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at *25 (D. Minn. Jan. 20, 2022) (finding 20,500 jobs nationally to be a significant number) (citation omitted), *report and recommendation adopted*, 2022 WL 807605 (D. Minn. Mar. 17, 2022); *Garcia*, 817 F. App'x at 649–50 (finding 22,000 jobs sufficient). The Court thus finds the number of jobs the ALJ identified at step five of the sequential analysis was sufficient and rejects Plaintiff's challenge on that ground.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.    Plaintiff's Request for Relief (ECF No. [14]) is **GRANTED IN PART** and **DENIED IN PART**;

2.    The Commissioner's Request for Relief (ECF No. [16]) is **GRANTED IN PART** and **DENIED IN PART**; and

3.    This matter is remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 9, 2024                    *s/ Dulce J. Foster*
                                            Dulce J. Foster
                                            United States Magistrate Judge